UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| EDDIE SANTANA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 14-CV-134-CVE-TLW |
|  | ) |  |
| THE STATE OF OKLAHOMA ex rel. | ) |  |
| BOARD OF REGENTS OF THE | ) |  |
| UNIVERSITY OF OKLAHOMA, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**OPINION AND ORDER**

Now before the Court is Defendant's Opening Motion to Dismiss (Dkt. # 9). Defendant The State of Oklahoma ex rel. Board of Regents of the University of Oklahoma (the State) argues that it has sovereign immunity from plaintiff's federal law claims of disability discrimination and that plaintiff has failed to exhaust his administrative remedies for his state law tort claims. Plaintiff does not respond to the State's sovereign immunity argument, but he contends that he did exhaust his remedies under the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 et seq. (GTCA).

**I.**

Eddie Santana alleges that he attended Rogers State University (RSU) in Claremore, Oklahoma and that RSU is a public university organized and operated by the State. Dkt. # 2-3, at 1. Santana claims that he has a learning disability, and he has attached a letter to his complaint

showing that RSU has acknowledged that he is a student with a learning disability.[1] Id. at 2. Santana intended to complete his degree in four years after his enrollment in 2007, but he claims that he was unaware that he would be required to complete a Capstone program to obtain a liberal arts degree. Id. The Capstone program requires a student to complete two classes. In the first class, a student must take a humanities seminar for the purpose of developing a topic for a 35 page academic writing assignment. Id. Each student has two chances within a three month period to present an idea for the writing assignment to a faculty committee, and the topic must be approved by the committee for the student to begin the second part of the process. Id. In the second course, the student must draft the paper and the student's grade for the Capstone program is determined based on the quality of the paper. Id.

Santana first attempted the Capstone program in the fall of 2012. However, his topic ideas were rejected by the committee and he took the class again in the fall of 2013. Id. at 3. Santana was again unable to come up with an acceptable topic and he could not proceed to the second part of the Capstone program. Id. RSU offered to put Santana in a different degree program that did not have a Capstone requirement, but Santana declined to switch programs on the ground that he could not afford to take any more classes at RSU. Id. On February 20, 2014, Santana filed this case in Rogers

---

[1] In his petition, plaintiff cites "Exhibit B" and states that the document shows that RSU has recognized him as a student with a disability. Dkt. #2-3, at 2. The copy of the petition attached to the notice of removal does not have an Exhibit B, but plaintiff has attached Exhibit B to his response to defendant's motion to dismiss. Dkt. # 10, at 9-10. The document is a letter from RSU's coordinator for disability services, and it states that RSU recognizes that plaintiff requires extra time to take tests and that he needs a reduced distraction environment for testing. Id. When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may "consider documents referred to in the complaint if the documents are central to the plaintiff's claims and the parties do not dispute the documents' authenticity" without converting the motion into a motion for summary judgment. Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).

2

County District Court alleging claims under the Americans with Disabilities Act, 42 U.S.C. § 12010 et seq. (ADA), and the Rehabilitation Act, 29 U.S.C. § 701 et seq. Id. at 3-4. He also alleges state law claims of negligence, breach of contract, and interference with contractual relations. Id. at 5-6. Finally, plaintiff claims that he was discriminated against on the basis of his economic status, and he could be alleging an equal protection claim under the Fourteenth Amendment to the United States Constitution. Id. at 6-7.

## II.

Sovereign immunity is a limitation on the Court's subject matter jurisdiction, and defendant's motion is considered a challenge to the Court's subject matter jurisdiction. See Clymore v. United States, 415 F.3d 1113, 1118 n.6 (10th Cir. 2005). When considering a motion to dismiss under Rule 12(b)(1), the Court must determine whether the defendant is facially attacking the complaint or challenging the jurisdictional facts alleged by the plaintiff. In Holt v. United States, 46 F.3d 1000 (10th Cir. 1995), the Tenth Circuit stated:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1002-03. Here, the State has facially attacked the sufficiency of the complaint's allegations as to the existence of subject matter jurisdiction over plaintiff's claims. In analyzing such motions to dismiss, the Court must presume all of the allegations contained in the complaint to be true. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1002-03

(10th Cir. 1995). This is the same standard of review applied to motions arising under Fed. R. Civ. P. 12(b)(6). See Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

Defendant argues that it has sovereign immunity from plaintiff's ADA claim,[2] because Title II of the ADA did not validly abrogate the State's sovereign immunity. Dkt. # 9, at 4-5. Defendant also argues that plaintiff failed to properly give notice of his state law tort claims and plaintiff failed to exhaust his administrative remedies before filing suit. Id. at 10-11. Plaintiff has filed a response (Dkt. # 10) to defendant's motion to dismiss, but he has not responded defendant's sovereign immunity argument. However, he does assert that he sent notice of his state law tort claims to defendant, and he argues that the notice was sufficient under the GTCA.

**A.**

Defendant argues that it has sovereign immunity from plaintiff's ADA claim. Under the Eleventh Amendment to the United States Constitution, "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States . . . ." U.S. CONST. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 363 (2001). Agencies of the State of Oklahoma, including the Board of Regents, are treated as the state for the purpose of sovereign immunity under the Eleventh Amendment. Pettigrew v. Oklahoma ex rel. Dept. of Public Safety, 722 F.3d 1209, 1212-13 (10th Cir. 2013). Congress may abrogate a state's sovereign immunity if Congress "(1) unequivocally indicates its intent to abrogate state sovereign immunity, and (2) acts pursuant to a valid grant of constitutional authority under § 5 [of the Fourteenth Amendment]." Guttman v. Khalsa, 559 F.3d 1101, 1117 (10th Cir. 2012).

---

[2] Plaintiff has also alleged a claim under the Rehabilitation Act, but neither party raises any argument as to defendant's sovereign immunity from suit under the Rehabilitation Act.

The ADA prohibits discrimination based on disability in three major contexts: "employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." Tennessee v. Lane, 541 U.S. 509, 516-17 (2004). When the ADA was enacted, Congress included a provision abrogating a state's sovereign immunity from suit under the ADA. The Supreme Court has determined that Congress failed to make the necessary findings under § 5 of the Fourteenth Amendment to abrogate the states' sovereign immunity, and the waiver of sovereign immunity contained in Title I of the ADA was invalid. Garrett, 531 U.S. at 374. However, as to Title II of the ADA, the ADA's waiver of sovereign immunity is valid and enforceable to the extent that a plaintiff seeks money damages against a state "for conduct that *actually* violated the Fourteenth Amendment . . . ." United States v. Georgia, 546 U.S. 151, 158-59 (2006) (emphasis in original). To determine whether an ADA plaintiff has alleged a claim that falls with the waiver of sovereign immunity, a district court must consider on a claim-by-claim basis:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."

Id. at 159.

Plaintiff is attempting to allege a claim for violation of Title II of the ADA, because he alleges denial of access to a public service, program, or activity due to an a disability. In the context of higher education, state and local governments are not permitted to exclude disabled students from "educational programs or activities, or otherwise discriminate[] against" disabled students because of the student's disability. Constantine v. Rectors and Visitors of George Mason University, 411

F.3d 474, 488 (4th Cir. 2005). Title II requires states to make "reasonable" modifications to educational programs for disabled students, but this is a limited duty on the states and "it does not require States to compromise their essential eligibility criteria for public programs." Id. To state a claim for a violation of Title II, a plaintiff must allege "(1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from the benefits or services of a public entity; and (3) that [his] exclusion was by reason of [his] disability." Meyers v. Colorado Dep't of Human Servs., 62 Fed. App'x 831 (10th Cir. Jan 6, 2003).[3]

    The Court takes into account that plaintiff is proceeding pro se and, construing his allegations broadly, he has alleged that he has a mental disability. RSU has acknowledged this disability and has offered plaintiff an accommodation of additional time to take tests and a reduced distraction environment for testing. Dkt. # 10, at 9. Plaintiff claims that he is required to complete the Capstone program to graduate from RSU but his proposed topics have not been approved by the faculty committee. He has not alleged any connection between his disability and his failure to obtain approval of a topic for the Capstone program. Plaintiff does not allege that RSU is preventing him from enrolling in the Capstone program again, but he does allege that RSU has identified an alternate degree program that would not require him to participate in the Capstone program. Viewing these allegations in a light most favorable to plaintiff, the Court finds that plaintiff has alleged no connection between his learning disability and his failure to proceed with the Capstone program. The mere fact that plaintiff's topic proposals have been rejected does not mean that he has been treated differently than non-disabled students, and his complaint contains no allegations that

---

[3]    Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

would support an inference that his alleged learning disability played a role in his failure to complete the first part of the Capstone program. His allegations also show that RSU has offered to place him in an alternate degree program if he is having difficulty completing the Capstone program, and this does not show that RSU is placing "a deliberate road block" preventing plaintiff from obtaining a degree. See Dkt. # 2-3, at 3. Plaintiff has not alleged that defendant engaged in conduct that would constitute a violation of Title II of the ADA, and plaintiff must make such a showing in order to establish that defendant's sovereign immunity from suit has been abrogated. Guttman, 669 F.3d at 1113. Based on the allegations of the petition, the Court finds that defendant is entitled to sovereign immunity from plaintiff's claim under Title II of the ADA.[4]

Even though the State has sovereign immunity from plaintiff's claim under the ADA, he has also alleged a claim under the Rehabilitation Act and the Court must separately determine whether it has jurisdiction over plaintiff's Rehabilitation Act claim. Under 42 U.S.C. § 2000d-7(a)(1), a state "shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act . . . or any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." States are not required to accept funding under the Rehabilitation Act, but a state that chooses to accept such funding waives its immunity from suit in federal court. Brockman v. Wyoming Dep't of Family Servs., 342 F.3d 1159, 1168 (10th Cir. 2003). The state of Oklahoma does accept federal funding under the Rehabilitation Act, and the State has waived its sovereign immunity from suit as to Rehabilitation Act claims. Deatherage v. Oklahoma Comm'n for Rehabilitation Servs., 2014 WL

---

[4] Implicit in the Court's sovereign immunity analysis is also a finding that plaintiff has failed to state a claim upon which relief can be granted under the ADA.

800951 (W.D. Okla. Feb. 28, 2014). The State does not have sovereign immunity as to plaintiff's Rehabilitation Act claim. However, the Court has already determined that plaintiff has not alleged a violation of Title II of the ADA. The language of the ADA and the Rehabilitation Act are substantially similar, and the Court applies the same analysis under the ADA and the Rehabilitation Act to determine if a plaintiff has adequately alleged a claim. Cohon ex rel. Bass v. New Mexico Dep't of Health, 646 F.3d 717, 725-26 (10th Cir. 2011). Because plaintiff has failed to state a claim under Title II of the ADA, he has also failed to allege a plausible claim under the Rehabilitation Act and this claim should be dismissed under Rule 12(b)(6).

**B.**

Plaintiff could also be alleging an equal protection claim, because he argues that RSU discriminates against students based upon their economic status. Dkt. # 2-3, at 7. Under the Fourteenth Amendment to the United States Constitution, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To state an equal protection claim, a plaintiff must first allege that "the challenged state action intentionally discriminates between groups of persons." SECSYS, LLC v. Vigil, 666 F.3d 678, 685 (10th Cir. 2012). If a plaintiff does identify some type of class-based discrimination, the Court must then consider the level of judicial scrutiny that applies to the governmental action and determine if the "discrimin[ation] can be justified by reference to some upright government purpose." Id. at 686. Assuming that plaintiff has alleged that he suffered from class-based discrimination, his equal protection claim based on the different treatment of economically disadvantaged students is subject to rational basis review. Ebonie S. v. Pueblo Sch. Dist., 695 F.3d 1051, 1059 (10th Cir. 2012). Applying the rational basis standard to alleged disparate treatment based on economic status, the

9

Tenth Circuit has stated that a plaintiff has the burden to "negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Cohon, 646 F.3 at 730. Plaintiff's allegations, at most, show that he is subject to an academic requirement applicable to all students seeking a liberal arts degree at RSU, and that he is being required to complete the Capstone program just like any other student. In other words, plaintiff is unable to complete his liberal arts degree because he cannot satisfy an academic requirement that is applicable to all liberal arts students. Plaintiff may personally have difficulty completing the Capstone program, but that does not mean that RSU has no rational basis for requiring liberal arts students to fulfill this requirement to obtain a liberal arts degree. Plaintiff has not alleged sufficient facts that could give rise to an equal protection claim, and plaintiff's equal protection claim should be dismissed under Rule 12(b)(6).

## C.

Plaintiff has also alleged claims of negligence, breach of contract, and interference with contractual relations under Oklahoma law. Under 28 U.S.C. § 1367(c), a federal district court may decline supplemental jurisdiction when it has "dismissed all claims over which it has original jurisdiction." The Court recognizes that it has discretion to retain jurisdiction over a pendent state law claim in some circumstances. United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966). However, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id. at 726; see also United States v. Botefuhr, 309 F.3d 1263, 1273-74 (10th Cir. 2002) ("a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial"). The parties dispute whether plaintiff gave proper notice of state law tort claims under the GTCA, and questions of Oklahoma law should be resolved by an

Oklahoma court. See United Mine Workers, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . ."); Sullivan v. Scoular Grain Co. of Utah, 930 F.2d 798 (10th Cir. 1991) ("Declining pendent jurisdiction is appropriate when the court needs a 'surerfooted' analysis of state law in an area of particular importance to a state."). The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, and the case should be remanded to Rogers County District Court.

**IT IS THEREFORE ORDERED** that Defendant's Opening Motion to Dismiss (Dkt. # 9) is **granted in part**, and plaintiff's ADA claim, Rehabilitation Act claim, and equal protection claim are **dismissed without prejudice**.

**IT IS FURTHER ORDERED** that Court Clerk is directed to remand this case to Rogers County District Court.

**DATED** this 23rd day of June, 2014.

_____
CLAIRE V. EAGAN
United States District Judge